UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*\*\*

Lisa Renee Thomas,

              Plaintiff,

vs.

Kilolo Kijakazi, Commissioner of Social Security,

              Defendant.

2:22-cv-00571-VCF

**Order**

MOTION TO REMAND [ECF NO. 19]; CROSS-MOTION TO AFFIRM [ECF NO. 23]

      This matter involves plaintiff Lisa Renee Thomas's request for a remand of the Administrative Law Judge's ("ALJ") final decision denying her social security benefits. Thomas filed a motion for remand (ECF No. 19) and the Commissioner filed a cross-motion to affirm. (ECF No. 23). I grant plaintiff's motion to remand and deny the Commissioner's cross-motion.

**I.    Background**

      Lisa Renee Thomas filed an application for supplemental security income on August 29, 2019, alleging disability commencing February 2, 2019. AR[1] 562-572. The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520. The ALJ agreed that Thomas did not engage in substantial gainful activity since February 2, 2019 (step one). AR 39. the ALJ found that Thomas had medically determinable severe degenerative disc disease

---

[1] The Administrative Record ("AR") is at ECF No. 16.

1

of the lumbar spine (step two). *Id.* The ALJ decided that the impairments did not meet or equal any "listed" impairment (step three). AR 41 (citing 20 C.F.R., Part 404, Subpart P, Appendix 1).

The ALJ assessed Thomas as retaining the residual functional capacity to perform light work in that she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can sit for about six hours, and stand/walk for about six hours in an eight-hour workday with normal breaks; she can occasionally climb ramps and/or stairs; she cannot climb ladders, ropes, and/or scaffolds; she can frequently balance; she can occasionally stoop, kneel, crouch, and crawl; and she must avoid concentrated exposure to extreme heat and cold, vibration, and hazards. AR 41.

The ALJ compared the residual functional capacity assessed to the demands of Thomas's past relevant work and decided that she can perform that kind of work (step four). AR 43. The ALJ concluded that Thomas did not meet the definition of disability between February 2, 2019, through the date of the decision. *Id.*

Plaintiff argues that the ALJ failed to articulate clear and convincing reasons for rejecting Thomas's testimony. ECF No. 19 at 6. Plaintiff notes that Thomas's treatment was not conservative because she received epidural injections. The most recent one was on January 11, 2020. AR 429. She then received a facet nerve block on August 15, 2020. AR 652. With improvement only lasting two days, AR 649, Thomas then received a radiofrequency ablation on the left side of her lumbar facet on September 15, 2020, AR 691, and then the right side on September 26, 2020, AR 644. Plaintiff also notes that she has been prescribed morphine. AR 106, 387 and 424.

The Commissioner argues the ALJ's decision is supported by substantial evidence. ECF Nos. 23 and 24 at 6. The Commissioner states the ALJ rejected plaintiff's testimony because the medical record showed overall routine medication management. *Id.* Plaintiff argues in her response and reply that although the ALJ used the word routine instead of conservative, that is a distinction without a difference

2

since terms suggest that treatment is not out of the ordinary or supportive of heightened measures. ECF No. 25 at 3. Plaintiff also argues that the ALJ impermissibly cherry picked the record. *Id.*

## II. Discussion

### a. Legal Standard

The Fifth Amendment prohibits the government from depriving persons of property without due process of law. U.S. Const. amend. V. Social security plaintiffs have a constitutionally protected property interest in social security benefits. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). When the Commissioner of Social Security renders a final decision denying a plaintiff's benefits, the Social Security Act authorizes the District Court to review the Commissioner's decision. *See* 42 U.S.C. § 405(g).

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The substantial evidence threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1154, 1157; *Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) (quoting *Biestek*); see also *Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009) (substantial evidence "is a highly deferential standard of review"). The substantial evidence standard is even less demanding than the "clearly erroneous" standard that governs appellate review of district court fact-finding—itself a deferential standard. *Dickinson v. Zurko*, 527 U.S. 150, 152-53 (1999). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The District Court's review is limited. *See Treichler v. Comm'r of SSA,* 775 F.3d 1090, 1093 (9th Cir. 2014) ("It is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.") The Court examines the Commissioner's decision to determine

whether (1) the Commissioner applied the correct legal standards and (2) the decision is supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is defined as "more than a mere scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Under the "substantial evidence" standard, the Commissioner's decision must be upheld if it is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938) (defining "a mere scintilla" of evidence). If the evidence supports more than one interpretation, the Court must uphold the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The ALJ must engage in a preliminary two-step analysis before discounting the claimant's testimony regarding her subjective symptoms. SSR 16–3p; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment, "which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991). The claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). If the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms by offering specific, clear and convincing reasons for doing so." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). To reject the claimant's testimony, the ALJ must point to specific facts in the record that demonstrate the individual's symptoms are less severe than she claims. *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009). General findings are not enough: the ALJ must identify which testimony is not credible and what evidence undermines it. *Lester*, 81 F.3d at 834.

In evaluating a claimant's testimony, the ALJ may use ordinary techniques of credibility

evaluation. *Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). For example, an ALJ may consider factors such as: (i) inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; (ii) whether the claimant engages in daily activities inconsistent with the alleged symptoms; or (iii) functional restrictions caused by the symptoms. *Rounds v. Comm'r SSA,* 807 F.3d 996, 1006 (9th Cir. 2015).

A court may not affirm where the ALJ "pick[ed] out a few isolated instances of improvement" to support the denial of benefits. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). "[N]o circuit court has weighed in on whether ALJ's are now allowed to cherry-pick the record in making a supportability or consistency finding, or what kinds of findings explicitly constitute cherry-picking under the new regulations." *Buethe v. Comm'r of Soc. Sec*., No. 2:20-cv-552-KJN, 2021 U.S. Dist. LEXIS 93526, at 13-14 (E.D. Cal. May 17, 2021). "Recently, however. numerous district courts across the country have remanded where evidence supporting or consistent with a rejected medical opinion was ignored." *Id.* (citing cases, including *Pearce v. Saul*, 2020 U.S. Dist. LEXIS 242106, 2020 WL 7585915, 4-6 (D.S.C. Dec. 22, 2020) (noting the plethora of medical records supporting and consistent with a physician's limiting opinion when determining the ALJ cherry-picked the evidence to discount this opinion, and holding that "[a]lthough the ALJ appears to have considered the appropriate factors, [she] failed to explain how the evidence supports her conclusion and meaningful review is frustrated"; relying on recent circuit precedent under the old regulations stating that "specious inconsistencies cannot reasonably support a rejection of medical opinions or other evidence")).

The Ninth Circuit has found injections to be nonconservative, *Garrison v. Colvin*, 759 F.3d 995, 1015 n. 20 (9th Cir. 2014); *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). This Circuit regularly holds that epidural injections and narcotics not conservative/routine treatments. *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (finding ALJ's reasons for determining conservative treatment

unconvincing because plaintiff used narcotics, took injections for back pain, and underwent surgery); *Childers*, 2019 U.S. Dist. LEXIS 57474, at 25 ("Many courts consider the use of narcotics and injections for pain management not conservative in nature").

The Court may remand for further proceedings if enhancement of the record would be useful. See *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 1990). The Court may also remand for further proceedings "'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Garrison v. Colvin* 759 F.3d 995, 1020 (9th Cir. 2014). Moreover, if the record is "uncertain and ambiguous," remand for further proceedings is appropriate. *Treichler v. Comm'r of SSA.*, 775 F.3d 1090, 1105 (9th Cir. 2014)).

### b. Analysis

The ALJ found plaintiff's testimony showed that plaintiff received routine treatment; that her condition was stable; and medications and pain management were effective in addressing the pain symptoms. AR 42. The ALJ does not explicitly use the words "conservative treatment[2]" but rather characterizes plaintiff's treatment as "routine."

Plaintiff suggests that the two terms—routine and conservative— can be used interchangeably. See *Hawkins v. Berryhill*, 721 Fed.Appx. 639, 641 (9th Cir. 2018) (ALJ referring to treatment as "conservative/routine"); *McCutcheon v. Astrue*, 2009 WL 1469202, at 14 (D. Or. 2009) (Commissioner arguing that plaintiff's treatment was conservative/routine"). The Commissioner argues that the ALJ does not cite conservative treatment as a basis for discounting plaintiff's symptoms.

---

[2] "Conservative treatment can suggest a lower level of both pain and functional limitation, justifying an adverse credibility determination." *Childers v. Berryhill*, 2019 U.S. Dist. LEXIS 57474, at 21 (D. Nev. Mar. 12, 2019).

The ALJ acknowledged that Thomas has suffered from medically severe impairments that could reasonably be expected to cause some of the alleged symptoms. AR 42. Regarding the claimant's testimony, the ALJ stated that

> [T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."

AR 42.

The ALJ did not articulate clear and convincing reasons for rejecting Thomas's testimony. Although it appears that the ALJ considered the appropriate factors, he does not explain specifically how the claimant's testimony is inconsistent with the medical evidence. Cherry-picking the records to accept only evidence that weighs against a finding of disability is not permitted. The ALJ's analysis frustrates meaningful review because it is not clear how the ALJ rejected the claimant's testimony. The ALJ's references to the claimant's testimony are general. The ALJ did not cite any affirmative evidence of malingering. Thomas also reported having worsening pain with activities such as prolonged standing, bending and lifting. See e.g., AR 528, 533 and 538. Thomas underwent progressively invasive medical procedures The ALJ has cherry-picked from the treating records. The ALJ's articulated reason for discounting the claimant's testimony, that Thomas's treatment is "routine" is ambiguous, and thus lacks the support of substantial evidence. Epidural injections and narcotics are not conservative treatments. It is unclear from the record how these treatments were routine.  No legal basis for rejection of claimant's testimony appears in the record. The ALJ is responsible for resolving ambiguities in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The "credit-as-true," rule permits a direct award of benefits on review in rare circumstances. *Leon v. Berryhill*, 874 F.3d 1130 at 3 (9th Cir. 2017, amended Jan. 25, 2018). Under the three-part rule, I

first consider whether the "ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 6. This step is met for the reasons set forth above. At the second step, I consider whether there are "outstanding issues that must be resolved before a disability determination can be made" and whether further administrative proceedings would be useful. *Treichler,* 775 F.3d at 1101. "In evaluating this issue, [I] consider whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1103-1104. "Where...an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* at 1105.

Since the ALJ's findings are inadequate and ambiguous, remand for further findings is appropriate. See *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995). The more prudent course is to remand this case to the ALJ for further comment on plaintiff's testimony. I find that further administrative proceedings are necessary and remand the case. I have reviewed the administrative record as a whole and I find that the ALJ's decision is not wholly supported by substantial evidence. I remand this case.

Accordingly,

I ORDER that plaintiff Thomas's motion for reversal and/or remand (ECF No. 19) is GRANTED. and the Commissioner's cross-motion to affirm (ECF No. 23) is DENIED.

The Clerk of Court is directed to enter final judgment in favor of plaintiff.

DATED this 15th day of December 2022.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE